## NEW ORLEANS, JANUARY, 1866.                 49

Succession of Jacob Weigel, on the Opposition of Helena Betz.

### SUCCESSION OF JACOB WEIGEL, ON THE OPPOSITION OF HELENA BETZ.

The acknowledgment by the defendant of the truth of the facts alleged in the petition is insufficient to support the demand for a divorce.

The word "established," as used in Article 1099 of the Civil Code, has a well known legal signification, and implies that the claim to property doubtful, as between the third person and the succession, is permanently settled and confirmed.

The admissibility of a witness does not depend on the amount of the interest involved; but it is competent for the party offering the witness, if the objector does not pursue the inquiry, to show, on cross-examination, whether or not the witness really has any disqualifying interest in the result of the suit, and for this purpose may inquire how the witness is interested.   Further inquiry may show that the interest admitted is not of a disqualifying nature.   Some witnesses may feel a strong interest in the success of one of the parties from friendship, relationship, or other motive, which goes to their credibility, or they may be interested in the question; and it is proper that the grounds of their belief, as to their interest, should be developed.

A release of one interested in a suit by an attorney of record is not good.   Such an act is not within the province of counsel, and he must have special authority to bind his client in such case.

Descendants are expressly prohibited from being witnesses in civil cases for or against their ascendants.   This prohibition is not based exclusively upon the reason that these relations are the forced heirs of each other, but because it has hitherto been the policy of the law to withdraw the witness from the necessity of testifying for or against those to whom he sustains such intimate and delicate relations, and to relieve the courts from the embarrassment of hearing and deciding upon this kind of proof.

APPEAL from the Fourth Judicial District of the Parish of Jefferson, *Beauvais,* J.   *Cutler & Thomas,* for succession.   *Myers & Hamilton,* for opposition.

HOWELL, J.   Jacob Weigel died on 17th July, 1863, and his wife, Sallie Weigel, opened his succession, in the parish of Jefferson, and qualified and gave bond as administratrix.

50 . SUPREME COURT OF LOUISIANA.

Succession of Jacob Weigel, on the Opposition of Helena Betz.

Upon her petition, the Recorder of the parish made an inventory of the effects and property, real and personal, belonging to the succession, which was filed and homologated on 4th September, 1863. On the 12th of the same month, one Helena Betz, in the form of a rule, opposed the filing and registering of the said inventory, on the ground that she is the sole owner, in her own right, of two pieces of the real property (fully described by her), and all the personal property, mentioned in the inventory; that said inventory was not completed in one day, and was not signed on the day of adjournment; and that, notwithstanding her opposition and remonstrances, and, without having had exhibited to him any titles in said succession, or describing any therein, he persisted in placing thereon her property, and she prayed that the said Recorder, the Clerk of the Court, and the pretended administratrix, be served with copies hereof; and that they show cause, on the 3d day of November, 1863, why the said pretended inventory should not be declared null and void, and of no effect in law, so far as it effects her rights; and why her said property should not be declared to be erroneously placed on said inventory, and why it should not be stricken therefrom, the same being her property.

The Clerk and Recorder answered that they acted officially, and under orders of the Court.

The administratrix, in her said capacity, and, as surviving wife and legal representative of the heirs, pleaded a general denial; alleged that all the mortuary proceedings were regular and legal; waived the informality of this proceeding to test the titles to property inventoried; set forth that she and her deceased husband had lived separately for many years; that, before their voluntary separation, four children were born of their marriage and are now living; that, since and during their separation, her husband lived in open concubinage with the plaintiff, Helena Betz, and acquired considerable property, which he caused to be placed in the name of his said concubine, who was, at first, a servant in the family, without the funds or means at any time of acquiring property; that the deceased frequently declared the intention of putting his property in the name of the plaintiff to prevent his wife and children from getting it; that she had aided her husband in acquiring more money than the estimated value of the property inventoried; that all the property acquired by him was community property; that all the transfers by the deceased to Nicholas Betz and others, and by those to the plaintiff, and all the purchases in the name of plaintiff, are fraudulent, made to defraud his heirs, and are disguised donations to his concubine, who used the funds of the deceased in making payments for the property described in the inventory; and she prays that the demand of the plaintiff be dismissed, that all the mortuary proceedings be declared legal and valid, that Helena Betz be decreed to be the concubine of the deceased and incapable of acquiring from him, directly and indirectly, and all the property mentioned in the inventory adjudged to be the property of the succession

of Jacob Weigel, deceased, in community with appearer; and, as such, administered and distributed to her and the four children, issue of her marriage with the deceased.

An order of Court was made that the cause be tried upon these proceedings, as to the titles to the property inventoried.

The plaintiff, after introducing the inventory, her authentic titles to the real estate claimed by her, and the testimony of the parish Recorder to prove the protest against making the inventory, objected, and reserved her bills of exception to any evidence, on the part of the administratrix, to invalidate her titles or prove fraud and simulation, on the grounds:

1. An administratrix cannot prove the simulation of her intestate's sale, unless alleged to be in fraud of creditors.

2. An administratrix cannot attack the authentic acts of her intestate in any other manner that the intestate himself could, if living, viz: by counter letters or interrogatories to the other party.

3. This opposition and rule is simply a summary process, the object of which is to strike out from the inventory of said succession certain real estate, as being improperly placed thereon, and, under said summary process, opponent could not be divested of her title to said real property, the proceeding for which purpose should be by petition and citation.

In support of the first and second objections, appellants' counsel refer us to 6 A. 494; 14 A. 610; 12 A. 684 and 759.

In the first two authorities cited, it was held that an administrator could not maintain the revocatory action without alleging injury to the creditors. In the other two, that forced heirs are considered creditors of their ancestor, and, as such, may attack his acts as simulated, to the extent of their *legitime*.

In the case at bar, the administratrix has alleged that the acts which are assailed "were fraudulent transfers, made for the purpose of defrauding the legal heirs of deceased, and were disguised donations," which brings the case within the rulings invoked. But it is charged that the acts complained of were disguised donations of real estate, prohibited by law, null and void, and that the property, in reality, belongs to the succession, and community.

Leaving out of view the question as to proper parties (which is not raised by the pleadings), it is difficult to understand who can, in law, make the proof necessary to establish these allegations, if the direct representatives of the deceased cannot. We think the evidence was properly admitted.

The third objection is to the form of proceeding.

The appellant having instituted the controversy in the form of a rule, and provoked an investigation of her titles to immovable property, complains with ill grace of the opposite party's right to deny the legality and reality of those titles in that proceeding. The latter might probably have successfully excepted to the form. The manner in which the case has been presented complicates the real questions involved, and increases

the difficulty of settling the rights of all the parties interested. It is a question not far from doubt, whether a judgment in this proceeding, and under the circumstances presented in this record, would be binding upon the children of the deceased, who are all of age; but, as we have concluded to remand the case, we will content ourselves with giving our opinion upon such points presented as will be necessary to its final decision.

If we view the proceeding, on the part of the appellant, as one authorized, under Art. 1099 C. C., which directs the notary to "make mention of the effects and property which are claimed by third persons, as having been intrusted to the deceased to keep on deposit, consignment or otherwise," it would be necessary for her to establish her ownership contradictorily, with the representative of the succession, who would, under the all ordinary principles and rules of jurisprudence, have the right to set up legal defences to the demand; for that article of the Code enjoins all such effects and property to "be estimated with the effects of the succession," and the third person to establish his claim to them, before they can be taken out of the inventory. We do not understand this article as precluding all legal defences to the claim of third persons for property included in the inventory. The word "established," as used in this article, has a well known legal signification, and implies that the claim to property, doubtful as between the third person and the succession, is permanently settled and confirmed.

We can view the proceeding before us in no other light than as a suit (irregular in its inception and many of its features) to settle the rights of the several parties to the property in dispute, and think the objection of appellant not maintainable.

It is shown that, on 28th June, 1838, Sallie Weigel, who is now administratrix, brought suit, in the First Judicial District Court, against Jacob Weigel, her husband, now deceased, for a separation of bed and board, on the ground that he kept a concubine (the plaintiff herein) openly and publicly in their common dwelling, to which he filed a general denial; and that, on 7th October following, a "judgment of separation between the plaintiff, Sallie Weigel, and defendant, Jacob Weigel, her husband, was rendered upon the said Jacob Weigel's written confession of the truth of the allegations of plaintiff's petition;" that, in April, 1841, Jacob Weigel, the defendant in said suit, applied to the same Court for a divorce, on the ground that more than two years had elapsed since the rendition of the above judgment of separation from bed and board, and no reconciliation between the parties had taken place, which was successfully resisted by the separated wife, on the ground that said judgment of separation from bed and board was rendered in her favor and could not be the basis of a judgment of divorce in his favor, and she, at the same time, obtained a judgment for alimony, at $20 per month, for the support of a child, issue of the marriage; that, since that time, the parties have lived

separately, the husband living with the appellant up to his death, in July, 1863.

Sallie Weigel, the administratrix, now treats the said proceedings and judgment as an absolute nullity, and claims to be the surviving wife in community, and entitled to one-half the property involved in this litigation. These questions should properly be decided in the settlement of the succession, contradictorily with the proper parties, but, as they may effect, to some extent, the rights of the parties to this controversy, and the lower Court recognized a community, we deem it necessary to give our opinion upon the effect of said judgment and proceedings.

In the case of *Harman* v. *McLeland,* 16 L. 26, it was held that the acknowledgment by the defendant of the truth of the facts alleged, was insufficient to support the demand for a divorce, and the Court well and forcibly states the reason and policy of the doctrine; and, while we wholly approve of it, we cannot say that, when a judgment has been solemnly rendered upon such evidence, subsequently recognized and invoked by both parties in a judicial proceeding, and acquiesced in for more than thirty years, it should be treated as a nullity. It may be unfortunate for the interests of society that there is no express legislation on this point, but we can find no law which declares such a judgment a nullity. We think, therefore, the judgment of separation from bed and board, between Sallie and Jacob Weigel, must have its legal effects, until regularly annulled.

Plaintiff reserved a bill of exceptions to the ruling of the District Judge, excluding the testimony of the witness, *Charles Stallman,* offered to prove the declarations of the deceased, relative to his insolvency, at the time and after he left the Delpit plantation, on the ground that no declarations of the deceased could be proven, except those relating to the titles in controversy.

We think the objection went more to effect than the admissibility of the evidence. The administratrix had introduced evidence to show the decedent's wages while on that plantation, with the view to prove his ability to purchase real estate; and the appellant offered the testimony of this witness as rebutting evidence, which it was competent for her to do, under the circumstances.

Another bill of exceptions was taken to the ruling of the Judge in not permitting the cross-examination of the witness, *Margaret Rederick,* on her *voir dire,* on the ground that the appellant could not inquire into the extent of the interest of the witness. The administratrix propounded the single question: "Have you any interest, directly or indirectly, or otherwise, in the result of this suit?" to which, the witness answered "Yes." The appellant, who offered the witness, then asked: "What is the extent of your interest, and how are you interested?" It is true, as urged by the counsel for the succession, that the admissibility of a witness does not depend on the amount of the interest involved, but it is competent for the party offering the witness, if the objection does not

pursue the inquiry, to show, on cross-examination, whether or not the witness really has any disqualifying interest in the result of the suit, and, for this purpose, may inquire how the witness is interested. Further inquiry may show that the interest admitted is not of a disqualifying nature. Some witnesses may feel a strong interest in the success of one of the parties, from friendship, relationship, or other motive, which goes to their credibility; or, they may be interested in the question, and it is proper that the grounds of their belief, as to their interest, should be developed. 1 Greenleaf, §§ 386, 392.

The appellant offered the witness, *Nicholas Betz*, her vendor of one of the properties in question, to prove that she paid the price mentioned in the act, and that she carried on, for years, a separate trade and business, by which she acquired the means of purchasing property; and, upon the Court's sustaining the objection, that the witness was interested, as vendor, her counsel drew up and offered a release to said witness, when the opposing counsel objected, that the counsel of the appellant had not the right, authority nor capacity to grant the release, and the Court sustained the objection. We think this ruling correct.

"A release by an attorney of record is not good." 1 Greenleaf, § 427. Such an act is not within the province of counsel, and he must have special authority to bind his client in such case.

The last bill of exceptions was taken to the ruling of the District Judge rejecting the testimony of *Paul Weigel*, son of the defendant and the deceased, offered by plaintiff, as a witness, only against the heirs of the deceased, to prove that the plaintiff protested against having her property inventoried; and that she had means and money sufficient to buy the said property, and that she paid for it with her own funds, on the ground that he could not be a witness against his mother, was infamous, and interested in the case.

The Court did not err in excluding this witness. His mother, as she presents herself before the Court, is not a mere nominal party to the suit. She is urging a demand in her own right, and is interested, in any event, in the costs. Whether she has a right to recover must depend upon matters presented during the trial; and the competency of a witness must be determined with reference to the parties, the pleadings, and the subject-matter of the suit. "Descendants are expressly prohibited from being witnesses in civil cases, for or against their ascendants. This prohibition is not based exclusively upon the reason that these relations are the forced heirs of each other, but because it has hitherto been the policy of the law to withdraw the witness from the necessity of testifying for or against those to whom he sustains such intimate and delicate relations, and to relieve the Courts from the embarrassment of hearing and deciding upon this kind of proof." 12 A. 410. There is nothing to show that the witness offered is one of those whom the law considers infamous; but, upon the last objection, although he was called to testify against his own interest, that interest is so blended with that of his co-heirs and mother,

that the effect of his testimony could not be separated and confined to his own.

The testimony, which was improperly excluded, may have an important effect in establishing appellant's ability to purchase the property, the titles to which she holds, and, upon another trial, the representative of the succession, or the heirs, may be able to trace the titles to each part of the properties embraced, respectively, in the acts filed by appellant.

We think justice requires that the case be remanded, to afford the heirs an opportunity to become, if they wish, or be made parties, and for more direct and satisfactory evidence to be introduced. The main questions are, whether the property, to which the appellant has produced titles, was acquired with her own funds, or those of the deceased; or, in other words, whether or not her titles are disguised donations to a concubine, which are nullities; and whether or not there are such parties as will authorize a judgment binding on those interested.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed; and that this cause be remanded for further proceedings, according to law, and the views enunciated in the foregoing opinion; the costs of appeal to be paid jointly by Sallie Weigel and the succession of Jacob Weigel.